NOT DESIGNATED FOR PUBLICATION

No. 110,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

GARY FLORES PERALES,
*Appellant.*


MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON and JEROME P. HELLMER, judges. Opinion filed October 30, 2015. Affirmed.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Amanda G. Voth*, assistant solicitor general, for appellee.


Before MALONE, C.J., MCANANY and ATCHESON, JJ.


*Per Curiam*:    A jury sitting in Saline County District Court convicted Defendant Gary Perales of multiple sex offenses against his niece during the years she lived with him and her aunt. On appeal, Perales attacks both the district court's pretrial ruling denying his motion to suppress evidence and the prosecutor's closing argument to the jury as depriving him of a fair trial. We find no reversible error on either score and, therefore, affirm the convictions.

1

Perales and his wife Cynthia took in M.P. and her younger brother several years after their father killed their mother. M.P.'s mother was Cynthia's sister. M.P. was about 11 years old when she arrived at the Perales home. Within a year, Perales began kissing and touching M.P. in a sexual manner. Perales' improper contact with M.P. quickly progressed to oral sex and sexual intercourse. M.P. testified that during the next 4 years Perales sexually assaulted her perhaps as many as 100 times.

In mid-2010, M.P. left the Perales' home and moved in with her boyfriend's family. According to M.P., Perales demanded as a condition of the move that she have sex with him on Sundays when Cynthia attended church. Several months later, M.P. revealed the abuse to a social service agency in Salina and then spoke with an investigator with the Salina Police Department.

Following an investigation, the Saline County Attorney's office ultimately charged Perales with four counts of aggravated indecent liberties with a child, five counts of rape, one count of aggravated incest, and two counts of criminal sodomy. An assistant attorney general represented the State during the 2-week jury trial that began in mid-September 2012. The district court dismissed two counts of rape before submitting the case to the jury. The jury convicted Perales on 8 of the remaining 10 counts, acquitted him of 1 count of aggravated indecent liberties, and could not reach a verdict on 1 count of rape. The district court later sentenced Perales to a controlling prison term of life plus 322 months. Perales has appealed.

ANALYSIS

On appeal, Perales raises several issues regarding the denial of his motion to suppress and challenges various aspects of the prosecutor's closing argument. We group the points that way and outline additional facts as necessary.

*Motion to Suppress*

Before trial, Perales filed a motion to suppress evidence law enforcement officers seized from his residence. Following an evidentiary hearing, the district court denied the motion.

The search and seizure unfolded this way. After M.P. spoke with the police department investigator, the investigator decided to contact Perales immediately at his home. The investigator and her partner recruited a bilingual uniformed officer to accompany them, since Perales' primary language is Spanish. M.P. asked if she could be present when they contacted Perales. The investigator discouraged M.P.'s involvement. The officers went to Perales' house. In the meantime, M.P. also drove there in her own car and parked up the street.

The officers knocked on the door of the house, hoping to initiate a conversation with Perales. Nobody answered. The investigator then walked up to M.P.'s car and told M.P. there was no response at the door. M.P. said Perales was inside and called him on her cell phone. M.P. spoke to Perales and encouraged him to answer the door.

The officers returned to the house, and Perales opened the door. He let the officers in. With the three officers around him, Perales sat at the dining room table and signed a consent to search that the bilingual officer read to him in Spanish. The investigators then searched the house and garage and seized various items as evidence. Perales then

3

accompanied the bilingual officer to the police station. After being read the *Miranda* warnings, Perales invoked his right to remain silent.

On appeal, Perales contends the district court erred in denying the motion to suppress the seized evidence because M.P. impermissibly acted as a government agent in calling him and inducing him to speak with the officers and because the three officers created a coercive presence rendering the consent to search involuntary. Finally, Perales submits his trial lawyer incompetently handled the motion to suppress, depriving him of adequate representation in violation of the Sixth and Fourteenth Amendments to the United States Constitution. He asserts the inadequacy of his trial lawyer for the first time in this appeal.

As for the first two points, Perales has presented no legal or factual grounds for reversing his convictions. Even if we were to assume M.P.'s actions or the conduct of the officers rendered the search and seizure of Perales' home unreasonable and, therefore, a violation of the Fourth Amendment to the United States Constitution, the remedy would be the exclusion of the seized items as evidence against him. *United States v. Leon*, 468 U.S. 897, 908-09, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) ("The Court has, to be sure, not seriously questioned, 'in the absence of a more efficacious sanction, the continued application of the [exclusionary] rule to suppress evidence from the case where a Fourth Amendment violation has been substantial and deliberate.'"). Perales identifies no evidence admitted at trial that should have been suppressed. Nor does he explain how any such evidence deprived him of a fair trial. Accordingly, Perales has not established a prejudicial error warranting reversal of his convictions and a new trial. Another panel of this court recently came to a like conclusion in similar circumstances. *State v. Miller*, No. 109,716, 2015 WL 3632029, at *3 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* July 6, 2015.

4

Perales has presented the issue as if an erroneous ruling denying his motion to suppress would automatically negate the jury verdicts and compel a new trial. The argument effectively treats the admission of evidence at trial that should have been suppressed on a defendant's pretrial motion as a structural error. But the law is otherwise. See *Arizona v. Fulminante*, 499 U.S. 279, 306-07, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (admission of evidence obtained in violation of Fourth Amendment subject to harmless error review).

We decline to consider Perales' argument that his trial lawyer so mangled the suppression issue that the performance fell below the constitutional standard for adequacy. The record reveals no patent errors of that magnitude. Without an evidentiary record exploring a trial lawyer's strategic considerations, an appellate court typically cannot assess the sufficiency of legal representation. See *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009). This is such a case. Perales recognized as much when he filed a motion with this court to remand to the district court for a *Van Cleave* hearing. Another panel denied the motion. Perales may challenge the constitutional adequacy of his representation in due course in a habeas corpus motion, as provided in K.S.A. 60-1507.

We find no reason to disturb Perales' convictions based on the arguments related to his motion to suppress evidence.

*State's Closing Argument*

Perales contends the assistant attorney general trying this case made numerous improper statements to the jurors during closing argument. We take up each of those instances after setting out the standard of review for prosecutorial misconduct in jury argument.

5

Kansas courts use a well-recognized, two-step test for measuring the impropriety of closing arguments in criminal cases:

> "'First, the appellate court must decide whether the comments fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. Second, if the prosecutor has exceeded those bounds, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury to the extent the defendant was denied a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009) (outlining mode of analysis); see *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009) (noting considerable range permitted advocates, including prosecutor, in arguing their causes in jury summations).'" *State v. Franco*, 49 Kan. App. 2d 924, 938, 319 P.3d 551 (2014) (quoting *State v. Schreiner*, 46 Kan. App. 2d 778, 793-94, 264 P.3d 1033 [2011], *rev. denied* 296 Kan. 1135 [2013]).

If the argument falls outside what is proper, the courts then look at three factors to assess the degree of prejudice:

> "'(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22-24,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error . . . changed the result of the trial], have been met. [Citations omitted.]'" *State v. McReynolds,* 288 Kan. 318, 323, 202 P.3d 658 (2009).

See also *Franco*, 49 Kan. App. 2d at 938-39. The Kansas Supreme Court has consistently adhered to this test. See *State v. Hudgins*, 301 Kan. 629, 646-47, 346 P.3d 1062 (2015); *State v. De La Torre*, 300 Kan. 591, 608, 331 P.3d 815 (2014).

• Perales contends the prosecutor overstepped the bounds of fair argument by referring in closing argument to his "grooming" of M.P. "to allow him to go towards more and more invasive sexual activity." The prosecutor later made a second reference to grooming, drawing an immediate objection from Perales' lawyer. The district court sustained the objection without any further comment or explanation. In *State v. Akins*, 298 Kan. 592, 604-05, 315 P.3d 868 (2014), the Kansas Supreme Court held that argument using the term "grooming" to describe the actions of pedophiles to ingratiate themselves to potential victims and encourage their participation in sexual conduct requires expert testimony explaining the characteristics of the practice for jurors. Absent such testimony, the argument relies on facts outside the evidence and is, therefore, improper. The rule in *Akins* plainly covers the argument at issue here. For what it's worth, the same assistant attorney general tried this case and *Akins*.

Because the argument was improper, we turn to assessing what prejudice may have befallen Perales as a result. The references can't be fairly characterized as gross and flagrant in the sense they in anyway dominated the State's closing argument or that grooming, as such, was a pronounced theme of the case. To the contrary, the remarks were quite limited. The Kansas Supreme Court did not decide *Akins* until more than a year after Perales' trial—cutting against a finding of either flagrancy or ill will. Likewise, the argument did not violate an order in limine or other procedural rulings of the district court in this case. Those considerations weigh against demonstrable prejudice to Perales. The district court also sustained the objection to the second reference to grooming, and we presume jurors follow those rulings. See *State v. Williams*, 299 Kan. 509, 560, 324 P.3d 1078 (2014).

Finally, this case rested heavily on the jurors' assessment of the relative credibility of M.P. and Perales. The jurors had the opportunity to observe both of them on the witness stand, particularly as they answered questions on cross-examination. The law treats the act of testifying under oath as a powerful method for separating truth-tellers

from liars. *Franco*, 49 Kan. App. 2d at 936 ("And '[t]he judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.'") (quoting *State v. Bellinger*, 47 Kan. App. 2d 776, 787, 278 P.3d 975 (2012), *rev. denied* 298 Kan. 1204 [2013] [Atcheson, J., dissenting]). The jurors found M.P. believable in that they convicted Perales of eight charges that necessarily required them to credit her accounts of the sexual assaults. The limited references to grooming would not have had any measurable impact on the determination of M.P.'s credibility.

Although the argument was improper, we can say without reservation it caused no material prejudice to Perales and most certainly did not call into question the fairness of his trial or the soundness of the verdicts.

• Perales complains that the prosecutor improperly commented on his credibility and that of Cynthia and M.P. A lawyer, of course, may not express a personal opinion to the jurors about who ought to be believed and who shouldn't.

At one point in her closing argument, the prosecutor said, "[M.P.] is a credible witness." She immediately went on to discuss evidence that supported M.P.'s credibility. Later, the prosecutor described M.P. as "a credible communicator" amidst another explanation of the evidence that corroborated M.P.'s testimony. As isolated phrases, the statements look to be questionable. But we must consider lawyers' comments in the context of the pertinent argument and the point being made. *State v. Naputi*, 293 Kan. 55, 59, 260 P.3d 86 (2011); *Schreiner*, 46 Kan. App. 2d at 793 (noting "the importance of reviewing counsels' remarks in jury summations in light of the overall thrust of the point being made rather than as isolated snippets removed from the surrounding commentary— commentary that often lends material shading and depth to what might otherwise appear to be of questionable propriety standing alone"). Here, in context, the remarks about

8

M.P.'s veracity seem to be grounded in the evidence rather than in personal opinion. They reflect proper argument. But they might have been better introduced with a phrase such as "the evidence shows" or "you should conclude" to avoid any possible ambiguity.

Perales next complains that the prosecutor impermissibly commented on his wife's veracity by asking the jurors: "Talk about Cynthia's credibility. What does she have to lose? Everything." The assistant attorney general then explained that Perales was the sole source of income for the family and alluded to Cynthia's conflicted emotions as she began to suspect a sexual relationship between her husband and her niece. The comment unambiguously comes across as fair argument based on the trial evidence, including Cynthia's testimony.

Finally in this respect, Perales complains about the prosecutor's characterization of him as a "passive[-]aggressive manipulator." The remark drew an immediate objection from Perales' lawyer as an unsupported psychological label. The district court sustained the objection. This remark is less a comment on credibility than it is an injection of a psychological concept without supporting expert testimony. It really is more like the argument based on grooming. And we will assume it to be improper for the same reason. But even with that assumption, we find no reversible error. The comment does not appear to be gross and flagrant or motivated by ill will. The district court's ruling on the objection went a long way toward curing any possible prejudice. Given the extensive evidence in the 2-week trial, we could not reasonably conclude the passing characterization had any impact on the jurors' deliberations or determinations.

- Perales contends the prosecutor made factual representations to the jurors in her closing argument that were without support in the trial evidence. He cites four instances. We have reviewed the closing argument and the evidentiary record and find no error.

9

In two of those instances, the prosecutor attributed statements to Perales. The first statement attributed to Perales is: "'This is my house[;] I can do whatever I want.'" M.P. testified that Perales said that to her. So the record supports the argument.

The next is the prosecutor's comment about the arrangement by which M.P. was allowed to move in with her boyfriend's family. It appears in the transcript this way: "'All right, you can move in with Cris as long as you come over here to have sex on Sundays. If Cris is going to get some, I'm going to get some, too.'" The court reporter transcribed the argument as if the statement were a direct quote the prosecutor attributed to Perales. But the context of the argument doesn't indicate it to be a quote, so much as a paraphrase or summary of the arrangement stated from Perales' point of view. The jurors, of course, did not hear the argument with the punctuation the court reporter later put in the transcript. We think they would have understood the remark as a rhetorical device rather than a quote. In any event, however, M.P.'s testimony established she understood "the arrangement" to be as the prosecutor described it, even if Perales never used those precise words. The argument was not unfair or impermissibly prejudicial to Perales.

The third was a statement attributed to M.P. about promising her mother to take care of her younger brother. Perales claims the conversation could never have taken place because M.P.'s mother was murdered. But M.P. told an investigator her mother made the request at the hospital as she was being treated for the injuries that took her life. At trial, M.P. testified she was present when her mother died. That evidence was before the jury and supported the closing argument.

Finally, Perales contends the prosecutor's statement in closing argument that "there is so much sex here"—a reference to what went on between him and M.P.—lacked a factual basis in the record. We simply observe that M.P.'s testimony was otherwise. Perales' suggestion about a lack of evidence on this point is preposterous.

10

• Perales asserts the prosecutor impermissibly shifted the burden of proof from the State to him in closing argument. As we mentioned, Perales testified in his own defense, called more than half a dozen other witnesses, and recalled M.P. briefly. In her argument, the prosecutor outlined reasons, grounded in the evidence, M.P.'s account should be accepted. She then asked rhetorically: "What is the defense then? What is the defense that they have raised that they have affirmatively put forward —" The argument was then interrupted by an objection the district court overruled, and the prosecutor then discussed the evidentiary flaws in the defense theory that M.P. made up the allegations against Perales.

We don't see impermissible burden-shifting here. The prosecutor never suggested the State could prove the elements of the charged offenses by a standard less demanding than beyond a reasonable doubt. Nor did she argue Perales had some obligation to prove his innocence. The comment, taken in context, focused the jurors' attention on weaknesses in the evidence Perales had presented, including his own testimony. In closing argument, a prosecutor may assess witness bias, factual inconsistencies, logical flaws, or other deficiencies in evidence a defendant has offered, so long as the assessment is grounded in the record rather than advanced simply as a matter of personal opinion. See *State v. Williams*, 299 Kan. 911, 939-40, 329 P.3d 400 (2014).

Having considered all of Perales' points, we find that although his jury trial may not have been perfect, it was fair. The law requires no more. See *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013) ("As we have recognized for decades, '[a] defendant is entitled to a *fair* trial but not a perfect one[.]'") (quoting *State v. Bly*, 215 Kan. 168, 178, 523 P.2d 397 [1974]).

Affirmed.