NOT DESIGNATED FOR PUBLICATION

No. 111,311

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JASON M. GLEASON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed November 20, 2015. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Christina Trochek*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS, J., and ROBERT W. FAIRCHILD, District Judge, assigned.

*Per Curiam*: Jason M. Gleason appeals following his convictions of attempted first-degree murder, criminal possession of a firearm by a convicted felon, two counts of aggravated battery, and two counts of criminal discharge of a firearm at an occupied vehicle. Gleason claims: (1) The district court erred when it gave a jury instruction on the levels of mental culpability that amounted to a directed verdict on some of the charges; (2) the prosecutor denied him a fair trial by making inappropriate comments during closing argument; (3) the district court erred when it allowed the State to present cumulative evidence that bolstered the credibility of one of its witnesses; and (4) the

1

district court violated his constitutional rights when it sentenced him to an increased sentence, based upon his prior criminal history, without requiring the State to include the criminal history in the charging document and prove it beyond a reasonable doubt to a jury. Finding no reversible error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of October 9, 2012, Kansas Highway Patrol (KHP) Master Trooper Ryan Wolting was on duty in Salina when he heard dispatch broadcast information about an attempt to locate a green Ford Explorer with Kansas temporary license plates. Dispatch stated that the vehicle possibly was occupied by a white female and a black male, one of whom might be armed. Wolting drove west on Interstate 70 to Interstate 135, which he took south, looking for the vehicle.

At approximately 6:24 p.m., Wolting saw a vehicle matching that description being driven by a white female who made eye contact with him and then hit her brakes. Wolting turned around and followed the vehicle. When they exited the Interstate, Wolting activated his emergency lights and, as he saw the vehicle run a stop sign, he activated his siren. A high-speed chase ensued and the Explorer eventually drove into a ditch and stopped. Wolting stopped his car behind the Explorer.

A man, later identified as Gleason, got out of the front passenger side of the Explorer and began firing a handgun in Wolting's direction. One bullet came through Wolting's windshield, narrowly missing him, and Wolting got out of his car and returned fire. Gleason ran southwest toward a wooded area away from the vehicles, and Wolting fired in that direction, first with his pistol and then with his rifle. The driver of the Explorer, later identified as Chrystal Bell, Gleason's girlfriend, attempted to get out of the driver's side of the Explorer, and Wolting told her to stay in her vehicle. As Wolting took

2

cover in trees across the road from the vehicles, he realized his face was bleeding and that the vision in his left eye was blurred.

KHP Lieutenant J.L. Reidel arrived on the scene and the two troopers made contact with Bell, who had been shot in the back. When Reidel and Wolting checked the Explorer, they discovered that Bell's three children were in the backseat; her 12-year-old son, D.B., had been shot in the face. Bell and her children were transported to the hospital. Later that evening, several K-9 officers deployed their dogs in a nearby field. One of the dogs located Gleason in a patch of trees, and he was arrested.

At the hospital, Bell had surgery to repair damage from a gunshot wound that had punctured her small intestine; she also had a fractured rib. D.B. had suffered a through-and-through gunshot wound to his face. A trauma surgeon stitched the wound, and D.B. ultimately lost four teeth. He was transferred to the pediatric unit and remained hospitalized for approximately 1 week. Kansas Bureau of Investigation (KBI) Agent Jeff Newsum interviewed D.B. while he was at the hospital.

While Bell and her children received treatment, Wolting also went to the hospital, where medical personnel removed glass from his face and examined his eye. The following day, Wolting went to his eye doctor and learned that a piece of glass had struck his left eye, affecting his vision. Prior to the incident, Wolting's vision was 20/20; but afterward, his vision in his left eye was 20/30 and he needed corrective glasses.

The State charged Gleason with one count of attempted first-degree murder, two counts of aggravated battery, four counts of attempted second-degree murder, three counts of criminal discharge of a firearm at an occupied vehicle, two counts of aggravated kidnapping, and two counts of kidnapping. After several pretrial hearings, the State amended the charges to consist of one count of attempted first-degree murder, one count of criminal possession of a firearm by a convicted felon, two counts of aggravated battery, and two counts of criminal discharge of a firearm at an occupied vehicle.

3

The jury trial began on August 19, 2013. The State presented testimony from Wolting, Reidel, Bell, D.B., Newsum, and other members of law enforcement involved in apprehending Gleason, processing the scene, interviewing Bell and her children, and matching bullets to Wolting's guns and a handgun found near the scene. Medical personnel who had treated Bell, D.B., and Wolting also testified. The State also admitted into evidence and played for the jury recordings from Wolting's and Reidel's dash cameras, which recorded the confrontation between Wolting and Gleason and the aftermath.

Gleason testified on his own behalf. Gleason stipulated that he had been convicted of a person felony. He admitted that he was with Bell and her children on the day in question. According to Gleason, a state trooper began to follow them and chased them until Bell's car hit a bump and "just died." Gleason took his gun and jumped out of the vehicle. He fired one shot and began running toward the woods; Gleason testified that he did not look at the trooper before firing, much less aim at anything, and he did not recall pulling the trigger again after the first shot. He stated that he "never intended for anybody to get hurt" and did not intend to shoot the police vehicle.

After hearing the evidence and closing argument, the jury found Gleason guilty of all counts, including attempted first-degree murder, criminal possession of a firearm by a convicted felon, two counts of aggravated battery, and two counts of criminal discharge of firearm at an occupied vehicle. On December 13, 2013, the district court sentenced Gleason to a controlling term of 751 months' imprisonment. Gleason timely appealed the district court's judgment.

JURY INSTRUCTION ON CULPABLE MENTAL STATE

Gleason first claims the district court erred when it gave a jury instruction on the levels of mental culpability that amounted to a directed verdict on some of the charges.

4

The jury instruction at issue is from PIK Crim. 4th 52.020 and states: "If the State has proved that the defendant acted intentionally, then the State has proved as well that the defendant acted knowingly. If the State has proved that the defendant acted intentionally or knowingly, then the State has proved as well that the defendant acted recklessly." Gleason contends that this instruction erroneously told the jury that if it found intentional conduct in the actions supporting the attempted first-degree murder charge, it could automatically find the requisite intent for all the other charges, including aggravated battery and criminal discharge of a firearm at an occupied vehicle which were based on reckless conduct.

The State replies by pointing out that the district court used the recommended PIK instruction. In addition, the State argues that the district court also gave additional instructions on the requisite mental state for each crime. Thus, the State contends that the challenged instruction could not have misled the jury.

> "In reviewing a claimed instructional error, an appellate court conducts a four-step analysis. Those steps, with the accompanying standards of review, are:
> "(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Andrew*, 301 Kan. 36, 40, 340 P.3d 476 (2014).

Under the first step of the analysis, Gleason properly objected to giving this jury instruction, articulating specific reasons for his objection that are the same as the grounds

5

for his appellate argument. By doing so, he preserved the issue for appellate review. See K.S.A. 2014 Supp. 22-3414(3).

Gleason argues that the challenged instruction was not legally appropriate. The State charged Gleason with attempted intentional, premeditated first-degree murder. See K.S.A. 2014 Supp. 21-5402(a)(1). The State also charged Gleason with aggravated battery involving "recklessly causing great bodily harm to another person or disfigurement of a person" and criminal discharge of a firearm at an occupied vehicle, which requires the "reckless and unauthorized discharge of any firearm." See K.S.A. 2014 Supp. 21-5413(b)(2)(A); K.S.A. 2014 Supp. 21-6308(a)(1)(B). Gleason asserts that the instruction at issue—which informed the jury that if the State proved that he acted intentionally, it proved he acted recklessly—instructed the jury that if the State had proved any intentional conduct, the State also had proved, as a matter of law, the reckless intent required for aggravated battery and criminal discharge of a firearm at an occupied vehicle. In doing so, Gleason contends the district court improperly invaded the jury's province as factfinder and violated his rights under the Fifth and Sixth Amendments to the United States Constitution to have a jury determine his guilt or innocence.

Gleason likens the challenged instruction here to an instruction erroneously given in *State v. Brice*, 276 Kan. 758, 762, 80 P.3d 1113 (2003). In *Brice*, the defendant was charged with aggravated battery, which required the State to show that he intentionally caused great bodily harm. The physician who treated the victim testified that the injury suffered—a gunshot wound—was "'a through and through injury.'" 276 Kan. at 760. The challenged instruction there read: "'As used in these instructions, the term Great Bodily Harm means, a "through and through bullet wound."'" 276 Kan. at 762. Our Supreme Court held that the district court erred by giving the instruction because it amounted to instructing the jury that certain testimony had established an element of the crime as a matter of law. 276 Kan. at 771-73.

6

The jury instruction here is distinguishable from the one in *Brice*. The jury instruction in *Brice* explicitly informed the jury that certain testimony had established an element of the crime. The jury instruction given here did not do so. As the State points out, the jury instruction given here was legally appropriate. The authority for the instruction is found at K.S.A. 2014 Supp. 21-5202(c), which states as follows:

"Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

The challenged jury instruction explains the concept codified in K.S.A. 2014 Supp. 21-5202(c). Moreover, the jury instruction is recommended at PIK Crim. 4th 52.020. Our Supreme Court recently reiterated: "We strongly recommend the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions. [Citation omitted.]" *State v. Barber*, 302 Kan. ___, 353 P.3d 1108, 1118 (2015).

Also, as the State notes, the district court instructed the jury, through the elements instructions, of the individual level of intent required for each crime for which Gleason was charged. The district court also gave the jury the following separate instruction:

"The State must prove that the defendant committed the crime of Attempt to Commit Murder in the First Degree intentionally.
"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State.
"The State must prove that the defendant committed the crime or Possession of a Firearm by a Convicted Felon knowingly.
"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about.

7

"The State must prove that the defendant committed the crimes of Aggravated Battery and Criminal Discharge of a Firearm recklessly.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist.

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

This language clearly instructed the jury of the level of mental culpability the State had to prove for each individual charge. In yet another instruction, the district court informed the jury that "[e]ach crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge."

"An appellate court examines jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury." *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010); see *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014). The jury instructions given here were legally appropriate, and Gleason does not argue there was insufficient evidence to support the instructions. We conclude that the jury instructions as a whole properly and fairly stated the applicable law and could not have misled the jury. Thus, we reject Gleason's claim that he is entitled to a new trial based on erroneous jury instructions.

PROSECUTORIAL MISCONDUCT

Next, Gleason claims the prosecutor denied him a fair trial by making inappropriate comments during closing argument. Specifically, Gleason argues that the prosecutor committed reversible error by referring to his testimony and theory of defense as "ludicrous" during closing argument. The State replies that the challenged comments

8

were within the wide latitude afforded prosecutors and were not misconduct. In the alternative, the State contends that even if the comments did constitute misconduct, they do not warrant reversal.

An appellate court utilizes a two-step process to review allegations of prosecutorial misconduct:

> "'First, an appellate court determines whether there was misconduct, *i.e.*, whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments compel reversal, *i.e.*, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial.' [Citation omitted.]" *State v. Knox*, 301 Kan. 671, 682, 347 P.3d 656 (2015).

Gleason highlights two comments from the State's closing argument. First, the prosecutor said, "The defendant didn't unintentionally fire his gun or unconsciously fire his gun. State submits that that is ludicrous and simply not supported by any of the evidence or testimony that you have received in this case." Later, in the rebuttal portion of the State's closing argument, the prosecutor also said:

> "And the defense wants you to believe that somehow the evidence showed that the defendant unconsciously fired these shots eight times. Eight times unconsciously fired these shots; unintentionally, unconsciously, but pulled the trigger eight times. *That is ludicrous* and it is not supported by one bit of evidence that has been submitted; not one bit of credible evidence that has been submitted to you." (Emphasis added.)

As Gleason correctly points out, our Supreme Court has held that it is improper for a prosecutor to characterize a defendant's version of events as "ludicrous." See *State v. Douglas*, 274 Kan. 96, 108, 49 P.3d 446 (2002) (prosecutor's comment that defendant's "'story is ridiculous and absurd and ludicrous'" was improper); *State v. Hernandez*, No.

9

94,873, 2007 WL 316787, at *13 (Kan. 2007) (unpublished opinion) (prosecutor's statement that defendant's testimony was "'ludicrous'" was improper).

Here, the prosecutor immediately followed her characterization of the defense as ludicrous by arguing that the evidence did not support Gleason's version of the events. But faced with a similar situation in *Hernandez*, our Supreme Court concluded: "Here, the prosecutor immediately followed that statement [the defendant's claim is ludicrous] by noting that Hernandez' version of the events was not supported by the record. However, this statement does nothing to correct the previous assertion that Hernandez' claim was ludicrous." 2007 WL 316787, at *13. Thus, our Supreme Court's precedent establishes that the prosecutor calling Gleason's defense ludicrous meets the first prong of the test for prosecutorial misconduct.

In the second step of the two-step analysis of prosecutorial misconduct, the appellate court considers three factors:

> "'"(1) [W]hether the misconduct was gross and flagrant; (2) whether it was motivated by prosecutorial ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors."' [Citations omitted.] No single factor is controlling, but the third factor can override the first two factors only if "'the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."' [Citations omitted.]" *Knox*, 301 Kan. at 684-85.

Our Supreme Court previously has found gross and flagrant misconduct where a prosecutor's conduct is of a type that has been previously and clearly prohibited. See, *e.g.*, *State v. Swint*, 302 Kan. ___, 352 P.3d 1014, 1026-27 (2015) (finding gross and flagrant misconduct where "the prosecutor violated a longstanding rule against appealing to juror sympathies"); *State v. Holt*, 300 Kan. 985, 1000, 336 P.3d 312 (2014) (finding gross and

flagrant misconduct where the prosecutor's conduct violated established caselaw); *State v. Crawford*, 300 Kan. 740, 755, 334 P.3d 311 (2014) (finding gross and flagrant misconduct where the prosecutor ignored consistent warnings in Kansas precedent). Here, we only have one published case and one unpublished case from the Kansas Supreme Court holding that it is improper for a prosecutor to characterize a defendant's version of events as "ludicrous." But because this conduct has been disapproved since at least 2002 in *Douglas*, this factor weighs in favor of finding that the prosecutor's statement herein was gross and flagrant misconduct.

Next, "[i]n analyzing ill will, this court considers whether the comments were 'deliberate or in apparent indifference to a court's ruling.' [Citation omitted.]" *Barber*, 302 Kan. at ___, (353 P.3d at 1119). Here, we find there is no evidence of ill will on the prosecutor's part. The prosecutor did not emphasize her belief that Gleason's defense was ludicrous, and she attempted to link her commentary to a lack of evidence supporting the defense. Because Gleason never objected to the prosecutor's comments, it cannot be said that the prosecutor repeated the comment after being warned by the court not to do so. While the defendant's failure to object does not preclude appellate review of prosecutorial misconduct claims, it can factor into this courts' analysis of whether the comments were made out of ill will. See *State v. Miller*, 284 Kan. 682, 720, 163 P.3d 267 (2007).

Lastly, this court must consider whether the evidence was of such a direct and overwhelming nature that the misconduct "would likely have had little weight in the minds of the jurors." *Knox*, 301 Kan. at 685. Gleason's defense was that he did not have the requisite mental culpability to commit the crimes. As the State points out, Bell testified at trial that Gleason took out a gun during the car chase. The recording from Wolting's dash camera showed Gleason shooting as soon as he got out of the Explorer. Wolting also testified that Gleason "immediately jumped out and started firing a handgun in [Wolting's] direction." D.B. testified that he saw Gleason fire a gun.

11

Ultimately, the question we must decide is whether any improper comments made by the prosecutor prejudiced the jury against Gleason and denied him a fair trial. Upon reviewing the entire record, we find there is no reasonable possibility that any misconduct during closing argument affected the verdict in this case. The prosecutor's improper comments were couched within an extensive discussion of the evidence presented at trial. In light of the evidence as a whole, Gleason's theory of defense, and the somewhat isolated nature of the prosecutor's improper comments, we find that the State has satisfied its burden of establishing beyond a reasonable doubt that the prosecutor's improper statements did not contribute to the verdict. Thus, we conclude that Gleason was not denied a fair trial based on prosecutorial misconduct during closing argument.

## IMPROPER BOLSTERING OF THE STATE'S WITNESS

Next, Gleason argues that the district court erred by allowing the State to present the testimony of KBI Agent Jeff Newsum regarding his interview with D.B. Gleason contends that Newsum's testimony was cumulative and presented solely to bolster D.B.'s unchallenged testimony. In response, the State argues that the district court did not err in allowing Newsum to clarify D.B.'s testimony. In the alternative, the State argues that any erroneous admission of Newsum's testimony was harmless error.

D.B. testified at trial to the events of October 9, 2012, and his resulting injury. The defense did not ask D.B. any questions. Later, as a witness for the State, Newsum testified that he talked with D.B. at the hospital. The district court allowed Newsum to testify about portions of his interview with D.B. over Gleason's objection.

Gleason argues on appeal that the district court erred by permitting Newsum to corroborate D.B.'s prior testimony which was not subject to any cross-examination. As Gleason correctly points out, our Supreme Court has long held that "[t]he general rule is that prior statements of a witness, consistent with his testimony at the trial, are not

admissible in corroboration of his testimony unless the witness has been impeached and then only for the purpose of rehabilitating him." *State v. Fouts*, 169 Kan. 686, 696, 221 P.2d 841 (1950). More recently, our Supreme Court again stated: "In general, previous statements by a witness, even in the same case, may not be used to bolster the credibility of that witness." *State v. McReynolds*, 288 Kan. 318, 328, 202 P.3d 658 (2009).

"The admission of prior consistent statement testimony is generally reviewed for an abuse of discretion. [Citation omitted.]" *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). "A district court abuses its discretion when the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. [Citations omitted.]'" *State v. Soto*, 301 Kan. 969, 977, 349 P.3d 1256 (2015).

A review of Newsum's testimony reveals that some of the agent's testimony either was not covered when D.B. testified or was inconsistent with D.B.'s testimony. For instance, the prosecutor questioned Newsum about D.B.'s statements about hearing comments about a gun, and the prosecutor had not posed any such question to D.B. Also, when the prosecutor asked D.B. whether he had seen Gleason with a bag, he said no; but when the prosecutor asked Newsum a similar question, Newsum testified that D.B. said he had seen Gleason with a backpack. These exchanges do not support Gleason's claim that Newsum's testimony was cumulative and offered only to bolster D.B.'s credibility.

However, some of Newsum's testimony was consistent with D.B.'s trial testimony and was offered only to bolster D.B.'s testimony even though he was not impeached. Based on our Supreme Court's precedent, the district court erred in allowing this testimony. See *McReynolds*, 288 Kan. at 328; *Fouts*, 169 Kan. at 696. But the erroneous admission of evidence does not necessarily compel reversal; this court must determine whether the error was harmless. See K.S.A. 2014 Supp. 60-261; *State v. Greene*, 299 Kan. 1087, 1095, 329 P.3d 450 (2014). The harmless-error standard of K.S.A. 2014 Supp. 60-261 "requires us to determine whether there is a reasonable probability that the

13

error affected the outcome of the trial in light of the entire record. [Citation omitted.]" 299 Kan. at 1095. As the party benefitting from the error, the State bears the burden of establishing that the erroneous admission of Newsum's testimony was harmless. See 299 Kan. at 1096.

As the State notes, the evidence against Gleason was very strong. In addition, even if Newsum's testimony improperly bolstered D.B.'s credibility, it is unclear how the bolstering undermined Gleason's defense. The State's case against Gleason did not hinge on D.B.'s credibility. Other evidence supported the State's theory, including Bell's testimony that Gleason had a gun out during the car chase, Wolting's testimony that Gleason jumped out of the Explorer and immediately began shooting at him, and the video from Wolting's dash camera that corroborated Wolting's version of the events.

In light of the record as a whole, the State has met its burden to show that there is no reasonable probability that the error affected the outcome of the trial. Although the district court erred in admitting some of Newsum's testimony, the error was harmless and does not compel reversal of Gleason's convictions.

SENTENCING ISSUE

Finally, Gleason argues that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it sentenced him to an increased sentence, based on his prior criminal history, without requiring the State to include the criminal history in the charging document and prove it beyond a reasonable doubt to a jury. Gleason contends that his sentence violated the precepts set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). But Gleason concedes that our Supreme Court previously has rejected his argument. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from

14

its earlier position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). There is no such indication here. Thus, we reject Gleason's claimed sentencing error.

Affirmed.