No. 105,115

STATE OF KANSAS, *Appellee*, v. RYAN DULL, *Appellant*.

(317 P.3d 104)

 Opinion filed January 31, 2014. 

*David Phillip Leon*, of The Law Office of David Leon, of Wichita, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Ryan Dull appeals from his convictions and sentences in two cases—one involving sex offenses against a 13-year-old victim tried to a jury and the other involving burglary and theft tried to the bench on stipulated facts while the jury in the first case deliberated.

Dull raises five issues: (1) Whether prosecutorial misconduct denied Dull a fair trial on the sex crime charges; (2) whether the district court judge erred in admitting evidence in Dull's jury trial about Dull's brother having sexual intercourse in the next room; (3) whether Dull's district court counsel was ineffective; (4) whether sufficient evidence supported Dull's sex crimes and burglary and theft convictions; and (5) whether the district judge's failure to make on-the-record findings on Dull's departure motion rendered Dull's sentences in the burglary and theft case illegal.

## FACTUAL AND PROCEDURAL BACKGROUND

The events that led to Dull's prosecution for aggravated criminal sodomy, rape, and aggravated indecent liberties began when he gave D.P.A. and her girlfriend, K.E.B., a ride to his home one July evening in 2009. The victim, D.P.A., whom Dull knew to be 13, had romantic feelings toward Dull, age 20. K.E.B. had similar feelings toward Dull's younger brother, Bryce, one of 17-year-old twins who lived with Dull. On the night of the crimes, the two girls had told their parents they would be spending the night elsewhere.

According to the girls, they socialized awhile with Dull and the twins and another friend in the living room. Then D.P.A. went with Dull into his bedroom while K.E.B. went with Bryce into his bedroom. Once in Dull's bedroom, Dull touched and kissed D.P.A.; took her clothes off; performed oral sex on her; penetrated her vagina with his finger; and then, after donning a condom, had sexual intercourse with her. D.P.A. emerged from the bedroom wrapped in a sheet, and, when the others asked if she was wearing any clothes, she lifted the sheet to show them that she was not. D.P.A. told K.E.B. and another friend that she and Dull were going to have sex again, but they did not. D.P.A. spent the night with Dull in his bed. The next morning, Dull drove the girls home. He "broke up" with D.P.A. by text about a week later.

When D.P.A.'s mother learned of these events, law enforcement became involved. When interviewed by the police, Dull initially denied knowing D.P.A. and denied being anywhere near his home on the night of the crimes. He later admitted giving D.P.A. a ride to his home but said that he had slept alone on the night in question.

Ultimately Dull was charged with aggravated criminal sodomy, rape, and aggravated indecent liberties in Case No. 09CR3875. In another complaint filed the same day in Case No. 09CR3876, Dull was charged with burglary and misdemeanor theft arising from a wholly unrelated incident.

At his jury trial in the sex crimes case, Dull testified that he had a girlfriend at the time of the crimes and never dated D.P.A. He admitted that, because Bryce wanted him to, he had driven K.E.B. and D.P.A. to his home. He also testified that D.P.A. asked him if he "would ever go out with her" and "if [he] liked her." He testified that he said no, that he wasn't interested, and that he had a girlfriend. He also testified that he did not have sex with D.P.A. and did not kiss her. He said that there was no sexual contact between them, and he went to bed alone on the night he had driven her and K.E.B. to his home. He said that, when he woke up, D.P.A. was in his bed and was clothed. He admitted that he had not been truthful with police during their initial interviews with him.

K.E.B.'s trial testimony and the testimony of the other friend who was present at the home largely corroborated D.P.A.'s version of events. D.P.A.'s mother also testified, as did Officer Grover "Jeff" Piper, who conducted investigative interviews. Piper's testimony about the results of his interviews of the girls and the friend was consistent with their trial testimony. He also testified about Dull's changing versions of the evening's events, including the fact that he originally claimed he was not present at the home but was at work.

The only person who continued to deny that Dull was at the home was the other twin, Brett. Brett testified that Dull was in the home only for about 15 minutes; that D.P.A. never went into Dull's bedroom; that both girls slept in the living room; that Brett slept in the room he shared with Bryce; and that Dull slept alone in his own room. Brett also accused the friend who testified consistently with K.E.B. of having "a habit of lying a lot."

While the jury was deliberating in Case No. 09CR3875, the district judge took up the burglary and misdemeanor theft charges in Case No. 09CR3876. After a short bench trial on stipulated facts, the judge found Dull guilty as charged. The jury in Case No. 09CR3875 then returned a verdict of guilty on all of the three sex crime charges.

At Dull's sentencing in the sex crimes case, on the way to imposing three concurrent hard 25 life sentences under Jessica's Law, the district judge rejected Dull's motion seeking a departure from the mandatory minimum under Jessica's Law and a further downward durational departure from the applicable grid range under the Kansas Sentencing Guidelines Act. The motion was based on Dull's lack of a significant criminal history, his description of the offenses as nonviolent, and D.P.A.'s willing participation in the sex acts. The judge did not explain his reasoning for finding no substantial and compelling reasons to warrant the departures on the record.

On the burglary and theft case, Dull received 30 months' imprisonment and a 12-month jail term, to run concurrent with each other and with the sentences imposed in the sex crimes case.

### PROSECUTORIAL MISCONDUCT

Dull argues that the prosecutor committed reversible misconduct during opening statement by commenting on D.P.A.'s credibility. Specifically, the prosecutor told the jury that, when D.P.A. was confronted by her mother about whether she had engaged in sexual intercourse with Dull, D.P.A. told her mother "the truth." Dull argues that the prosecutor's comment denied him a fair trial and requires reversal.

A claim of prosecutorial misconduct based on comments made during opening statements, which are not evidence, will be reviewed on appeal even absent a contemporaneous objection. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Our standards governing review of prosecutorial misconduct claims have often been recited:

"Review of prosecutorial misconduct claims involves a two-step process. The appellate court first decides whether the comments were outside the wide latitude a prosecutor is allowed, *e.g.*, in discussing the evidence. If so, there was misconduct. Second, if misconduct is found, the court must determine whether the improper comments prejudiced the jury and denied the defendant a fair trial."

"The case of *State v. Tosh*, 278 Kan. 83, 93, 97, 91 P.3d 1204 (2004), identified three factors to consider in determining if the prosecutorial misconduct so prejudiced the jury against the defendant that a new trial should be granted: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence against the defendant was of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. Under *Tosh*, none of these three factors is individually controlling. And before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967), have been met." *State v. Bridges*, 297 Kan. 989, Syl. ¶¶ 14, 15, 306 P.3d 244 (2013).

We have also recently reviewed the two harmlessness tests and how they intersect in a prosecutorial misconduct analysis. Under the constitutional harmless error analysis defined in *Chapman*,

" 'the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

"Under the harmless error analysis defined in K.S.A. 60-261, the test is equally clear. The court 'determine[s] if there is a reasonable probability that the error did or will affect the outcome of the trial in light of the entire record.' [Citation omitted.]

"Under both standards, the party benefiting from the error . . . bears the burden of demonstrating harmlessness. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013). That burden is higher when the error is of constitutional magnitude. See *Herbel*, 296 Kan. at 1110 ('Clearly, the party benefiting from the constitutional error must meet a higher standard to show harmlessness than the standard required in nonconstitutional error.')." *Bridges*, 297 Kan. at 1013.

In addition, when

"both the constitutional and nonconstitutional error clearly arise from the very same acts and omissions, we logically begin with our harmlessness analysis of the constitutional error. . . . [I]f we decide the constitutional error is not harmless and reverse the convictions, there is no point in analyzing whether the State met the lower standard for harmlessness under K.S.A. 60-261." *Bridges*, 297 Kan. at 1015 (citing *Herbel*, 296 Kan. at 1111).

A prosecutor is not permitted to offer his or her opinion on the credibility of a witness. See *State v. Marshall*, 294 Kan. 850, 281 P.3d 1112 (2012); but see *State v. Scott*, 286 Kan. 54, 83, 183 P.3d 801 (2008) ("It is improper for a prosecutor to 'vouch' for the credibility of a witness," but "it is not improper for a prosecutor to argue that of two conflicting versions of an event, one version is more likely to be credible based on the evidence."); *State v. Davis*, 275 Kan. 107, 121-23, 61 P.3d 701 (2003) (prosecutor's statement that victim "should be believed" based on evidence, not vouching for witness).

The prosecutor's assertion here that D.P.A.'s story to her mother was "the truth" was outside the wide latitude allowed to attorneys for the State, because it effectively gave D.P.A. the State's blessing as a credible witness against Dull. However, we do not agree with Dull that the prosecutor's mistake requires reversal of Dull's sex crime convictions.

The comment was not repeated or emphasized; it did not appear calculated or deliberate. It is amenable to characterization as neither gross and flagrant nor a product of ill will. See *State v. Inkelaar*, 293 Kan. 414, 430, 264 P.3d 81 (2011) (discussing hallmarks of gross and flagrant conduct, conduct motivated by ill will); *State*

*v. Kemble*, 291 Kan. 109, 121-25, 238 P.3d 251 (2010) (discussing whether prosecutor's behavior motivated by ill will).

In addition, given the strength of the evidence against Dull— coming not just from D.P.A. but from other witnesses to the conduct of Dull and D.P.A. at Dull's home on the night in question— we are satisfied beyond a reasonable doubt that the prosecutor's early and isolated reference to "the truth" did not affect the outcome of the trial in light of the entire record. This case, unlike many sex crime prosecutions, was not a mere credibility contest between victim and alleged perpetrator. Moreover, the defense was able to respond to the prosecutor's remark during counsel's opening statement—"I want to point out a couple things [the prosecutor] said, that [D.P.A.] told [her mother] the truth . . . . Ladies and gentlemen, you're going to get the evidence and you're the finder of the truth, not him. You will determine what did or did not happen." Both sides in this case were able to point out weaknesses in the opponent's evidence. And the district judge dutifully instructed Dull's jury that statements of counsel were not evidence.

In light of the entire record, we hold that the prosecutor's step outside the wide permissible latitude of comments to the jury was not reversible error. There simply is no reasonable possibility that the prosecutor's momentary slip contributed to the guilty verdicts against Dull. See *Ward*, 292 Kan. 541, Syl. ¶ 6.

## ADMISSION OF EVIDENCE ABOUT BROTHER'S ACTIVITIES

Dull's next appellate argument is that the district judge erred in admitting evidence that his younger brother was having sex with D.P.A.'s friend in the next bedroom during the alleged crimes. There was no objection to the admission of this evidence at trial. We therefore do not reach the merits of this issue. See K.S.A. 60-404; *State v. Houston*, 289 Kan. 252, 270, 213 P.3d 728 (2009); *State v. Hollingsworth*, 289 Kan. 1250, 1255, 221 P.3d 1122 (2009) (citing *State v. Bryant*, 285 Kan. 970, Syl. ¶ 6, 179 P.3d 1122 [2008]).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Dull argues that his trial counsel provided him with ineffective

assistance, violating the Sixth Amendment to the United States Constitution and entitling him to reversal and retrial.

The merits of a claim of ineffective assistance of counsel ordinarily are not addressed for the first time on direct appeal. *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009); *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000); *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986) (overruling *State v. Pink*, 236 Kan. 715, 696 P.2d 358 [1985]).

The usual course of action is a request by appellate counsel for remand to the district court for a hearing on the ineffective assistance claim. See *Van Cleave*, 239 Kan. at 120. But, in this case, appellate counsel for Dull confirmed at oral argument before us that he was not seeking such a remand.

Although "there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious," and an ineffectiveness claim can therefore be resolved when raised for the first time on appeal, these circumstances are "extremely rare." *Rowland*, 289 Kan. at 1084-85; see also *State v. Levy*, 292 Kan. 379, 253 P.3d 341 (2011) (declining to consider ineffective assistance claims for first time on direct appeal; declining to remand for *Van Cleave* hearing based on defendant's failure to meet minimal requirements); *Laymon v. State*, 280 Kan. 430, 444, 122 P.3d 326 (2005) (direct appeal counsel's performance objectively unreasonable; performance prejudiced defendant); *Carter*, 270 Kan. at 433-34, 440-41(trial counsel's pursuit of guilt-based defense despite client's contrary wishes ineffective, prejudicial per se). Further, we have recognized the danger inherent in forgoing a *Van Cleave* procedure:

"If an appellate court foregoes the *Van Cleave* procedure, it risks what has occurred here: The defendant, with or without legal assistance, later moves under K.S.A. 60-1507 to challenge ineffective assistance of counsel, either to complete the litigation of an earlier argument or to raise a new one or both. Without a thorough procedure in the first instance, such claims cannot be cavalierly rejected." *Rowland*, 289 Kan. at 1084-85.

Dull's case is not the rare one in which we can dispose of his ineffective assistance claim without district court proceedings in

the first instance. At least one of his arguments may require an evidentiary hearing to resolve it. Given his appellate counsel's apparently deliberate decision not to seek a *Van Cleave* remand, we will not order one *sua sponte*.

## SUFFICIENCY OF EVIDENCE

Dull attacks the sufficiency of the evidence in both the sex crimes case and the burglary and theft case.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' " *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011) (quoting *State v. Drayton*, 285 Kan. 689, 710, 175 P.3d 861 [2008]). In determining whether there is sufficient evidence to support a conviction, an appellate court does not reweigh the evidence or judge the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). When a case is decided on stipulated facts, an appellate court has de novo review over sufficiency of the evidence claims. *State v. McCammon*, 45 Kan. App. 2d 482, 488, 250 P.3d 838, *rev. denied* 292 Kan. 968 (2011).

*Sex Crime Convictions—Case No. 09CR3875*

Dull's sufficiency argument in this case focuses on D.P.A.'s faulty memory, the lack of detail in her version of events, and inconsistencies in her testimony. Dull concludes that "it is reasonable to assume the alleged victim's testimony was pressured and not accurate." Specifically, Dull notes that D.P.A. didn't remember when she started or for how long she had been texting Dull; that D.P.A. lied to her mother in order to go to Dull's house; that she could not describe the house or remember whether it contained one or two televisions; that the State admitted testimony of K.E.B., who "also had intercourse that evening;" and that D.P.A. told her mother she had had sex with Dull only after "the mother approached the alleged victim in a crazy upset fashion."

These observations by Dull do not justify his conclusion and do not meet our demanding standard for reversal for insufficiency of the evidence. The jury chose to believe D.P.A.'s version of events after observing her demeanor and hearing corroboration of her story from others. The jury also had an opportunity to observe and evaluate the worth of Dull's version. Conflicting evidence is not necessarily insufficient evidence. A factfinder could have found Dull guilty beyond a reasonable doubt of all three sex crimes, and his argument to the contrary is without merit.

*Burglary and Theft Convictions—Case No. 09CR3876*

In the body of his brief, Dull includes the heading: "Mr. Dull should not have been convicted [in] 09CR3876." The entirety of his argument on this issue is:

"Mr. Dull was found guilty by stipulated facts. Pursuant to the case law presented above, such stipulation was [neither] an effective means nor a sufficient means to be convicted of the crime. Thus, such conviction and sentence should be reversed."

Neither the cases cited in earlier sections of Dull's brief nor any other legal authority of which this court is aware supports these two sentences. We deem this issue abandoned by lack of citation. See *State v. Holman*, 295 Kan. 116, 139, 284 P.3d 251 (2012) (issue mentioned in passing but not argued, supported; abandoned).

### FAILURE TO EXPLAIN REJECTION OF DEPARTURES ON THE RECORD

Dull's last argument on this appeal challenges the district judge's failure to specifically address the defense motion for departure arguments on the record. He suggests that the district judge was required to " 'issue findings of fact and conclusions of law regarding the issues submitted by the parties, and . . . enter an appropriate order.' K.S.A. 2[1]-4718." Dull is not challenging his sentence or the denial of the departure motion but what he perceives as a procedural flaw under what he believes to be the governing statute.

This claim of error presents a question of law, over which this court's review is unlimited. *State v. Dale*, 293 Kan. 660, 662, 267

P.3d 743 (2011) (interpretation of statute a question of law, review unlimited).

The first departure sought by Dull was governed by Jessica's Law, K.S.A. 21-4643. Specifically, 21-4643(d) provides that a sentencing judge who departs from the 25-year mandatory minimum for the life sentence "shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." This provision does not have a similar requirement for an on-the-record explanation of a sentencing judge's *rejection* of a departure from the mandatory minimum. See *State v. Remmert*, 298 Kan. 621, 631, 316 P.3d 154 (2014). Thus there was no procedural error in the district judge's refusal to depart from the mandatory minimum.

The second departure sought by Dull—a further downward durational departure from the applicable grid range under the Kansas Sentencing Guidelines Act—did not come into play because the first departure was not granted. See *State v. Spencer*, 291 Kan. 796, Syl. ¶ 7, 248 P.3d 256 (2011) (departure from mandatory minimum of Jessica's Law places defendant on grid applicable to crime severity level, criminal history score under Kansas Sentencing Guidelines Act; further downward durational departure a function of grid range). We therefore need not analyze whether the district judge followed the appropriate procedure. See K.S.A. 21-4718(a)(2), (a)(4).

Finally, Dull also advances the argument that Supreme Court Rule 183(j) (2013 Kan. Ct. R. Annot. 278) required specific factual findings and conclusions of law. This authority is plainly inapplicable. The cited provision refers to rulings on collateral challenges under K.S.A. 60-1507.

Dull is not entitled to relief on this appellate claim.

## CONCLUSION

For all of the reasons set forth above, we affirm the convictions and sentences of defendant Ryan Dull in Case No. 09CR3875 and Case No. 09CR3876.