NOT DESIGNATED FOR PUBLICATION

No. 115,021

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILMO VILLARBO HAAKE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed January 13, 2017.
Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Christina Trocheck*, special assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and LEBEN, JJ.

*Per Curiam*:  Wilmo Villarbo Haake pled no contest to one count of aggravated criminal sodomy. This crime was an off-grid person felony requiring a mandatory minimum sentence of 25 years' imprisonment. At sentencing, Haake made two durational departure requests. First, he requested that the trial court depart from his mandatory off-grid prison sentence and sentence him under the Kansas Sentencing Guidelines Act (KSGA) grid. Second, assuming that the trial court would grant his departure request to be sentenced on the grid, Haake requested that the trial court further depart from the presumptive grid sentence an additional 50%. The trial court granted Haake's departure

1

request to be sentenced on the grid but denied his request for a further 50% departure from the presumptive grid sentence. Haake appeals, asserting that the trial court abused its discretion by denying his second departure request. Nevertheless, Haake's argument fails because the trial court's denial of his second departure request was reasonable under the facts of his case. As a result, we affirm.

The State charged Haake with two counts of aggravated criminal sodomy with a child under 14 years old, each off-grid person felonies in violation of K.S.A. 2015 Supp. 21-5504(b)(1), and three counts of aggravated indecent liberties with a child under 14 years old, each off-grid person felonies in violation of K.S.A. 2015 Supp. 21-5506(b)(3)(A). The alleged crimes both involved the same female victim, who was 7 years old. Haake was 44 years old and the victim's godfather.

Following his arrest, Haake made incriminating statements that he had touched the victim's vagina and buttocks with both his hands and his penis. The victim had indicated that Haake inserted his penis into her buttocks.

Eventually, Haake entered a plea agreement with the State. Under this plea agreement, Haake agreed to plead no contest to one count of aggravated criminal sodomy. In exchange, the State agreed to the following: (1) it would dismiss Haake's remaining counts; (2) it would jointly recommend a durational departure from the mandatory minimum off-grid 25-year sentence to the presumptive KSGA grid sentence; and (3) it would allow Haake to request a further durational departure of up to 50% off the presumptive grid sentence, which it would oppose. In keeping with this agreement, Haake pled no contest to one count of aggravated criminal sodomy.

Before sentencing, Haake moved for a durational departure to the grid, as well as a 50% reduction of time on the mitigated box of the grid sentence. Haake argued that the trial court should grant his departure requests for the following reasons: (1) he had no

2

prior history of violence or sexual misbehavior; (2) he was older and therefore less likely to reoffend; (3) he intended to complete sexual offender treatment programs in prison; (4) he was acting as a "Good Samaritan" during the period the crime occurred because he gave the victim and her mother shelter and food when they had nowhere else to go; and (5) the degree of harm with his crime was "relatively small" given that no evidence supported "physical penetration."

At sentencing, Haake argued that he was entitled to a durational departure based on the arguments within his motion. Then, in accordance with the plea agreement, the State argued that it would recommend that the trial court grant a durational departure from the mandatory off-grid Jessica's law sentence to the presumptive KSGA grid sentence. The State asserted that substantial and compelling reasons to depart existed because Haake's decision to plead no contest showed that he had accepted responsibility for his actions. Moreover, the State emphasized that his decision to plead no contest prevented the victim from experiencing the trauma of trial. Nevertheless, the State requested that the trial court impose the aggravated-box grid sentence and not grant Haake's request for a further 50% departure from the grid sentence. The State pointed out that Haake abused his position of trust with the victim.

The trial court found that substantial and compelling reasons to sentence Haake on the KSGA grid existed. In making this finding, the trial court stated that Haake had "accept[ed] some responsibility by entering a plea . . . and therefore the child did not have to testify[,] and secondly and perhaps most importantly the State [was] also asking that the Court . . . grant a departure to the . . . guideline sentence." Yet, the trial court found that those reasons, in addition to the reasons listed in Haake's motion, were not so compelling as to grant Haake's request to reduce his grid sentence a further 50%. Accordingly, the trial court granted Haake's departure request to be sentenced on the KSGA grid but denied his request to depart from that grid sentence another 50%. Then, the trial court decided to sentence Haake to the standard-box grid sentence. Based on

3

Haake's criminal history score, the trial court sentenced Haake to 195 months' imprisonment followed by lifetime postrelease supervision.

*Did the Trial Court Abuse Its Discretion?*

Haake's only argument on appeal is that after the trial court granted his durational departure request to sentence him on the grid, the trial court abused its discretion when it denied his request to reduce his grid prison sentence by an additional 50%. The State responds that the trial court did not abuse its discretion because such a drastic reduction in prison time was not warranted given the facts of Haake's case.

Haake was convicted of aggravated criminal sodomy, an off-grid Jessica's law offense given that he was over the age of 18 when he committed the crime. See K.S.A. 2015 Supp. 21-5504(c)(3). Under K.S.A. 2015 Supp. 21-6627(d)(1), first-time Jessica's law offenders may move for a durational departure from the mandatory minimum off-grid sentence. Yet, the trial court shall not grant this departure unless it "finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2015 Supp. 21-6627(d)(1). A substantial reason is something real and not imagined, and a compelling reason is something that supports the departure based on the unique facts of the case. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015). While engaging in this analysis, the court must not attempt to weigh mitigating circumstances against aggravating circumstances. *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015).

If the trial court departs from the mandatory minimum term of imprisonment, it must "state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 2015 Supp. 21-6627(d)(1). The granting of the departure results in the defendant being sentenced on the KSGA grid. Once on the grid, the trial court can choose to further depart from the sentencing grid. *State v. Gilliland*, 294 Kan.

4

519, 551, 276 P.3d 165 (2012), *cert. denied* 113 S. Ct. 1274 (2013). Yet, if the trial court chooses to further depart it must justify both the departure from the mandatory off-grid sentence and the departure from the presumptive guidelines sentence. *Gilliland*, 294 Kan. at 551.

The trial court need not make findings on the record why it is denying a departure motion. *State v. Dull*, 298 Kan. 832, 842, 317 P.3d 104 (2014). Appellate courts will uphold the denial of a departure under Jessica's law unless the trial court abused its discretion. *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). An abuse of discretion occurs when no reasonable person would have taken the view adopted by the court, when the court makes an error of law, or when the court makes an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Thus, when defendants challenging the denial of a Jessica's law departure motion do not argue that the trial court made an error of law or fact, then the standard of review is whether no reasonable person could have agreed with the trial court's decision in light of the aggravating and mitigating factors. *State v. Florentin*, 297 Kan. 594, 599, 303 P.3d 263 (2013).

It is readily apparent the trial court did not abuse its discretion. Haake does not assert that the trial court made an error of law or fact, meaning the trial court's decision to not depart from the grid sentence another 50% is reversible only if no reasonable person would agree with the trial court's decision. *Florentin*, 297 Kan. at 599. In this case, the trial court granted the departure from Haake's mandatory off-grid sentence because Haake took some responsibility by pleading no contest to the crime, he did not put the victim through the trauma of trial, and the State agreed to this departure. Therefore, the trial court found those factors convincing and granted a significant departure. Because of this departure, excluding good time, Haake will serve only a 16-year and 3-month prison sentence as opposed to the mandatory minimum 25-year prison sentence. See K.S.A. 2015 Supp. 21-6627(a)(1)(D). Given this already significant departure, the trial court's decision not to further reduce Haake's grid sentence by 50% was clearly reasonable.

This is especially true when one considers the remaining mitigating factors that Haake presented to the court. Outside of the fact Haake had no prior violent or sex crimes within his criminal history, the remaining factors that Haake provided to support a departure were totally unconvincing. Again, Haake asserted that the trial court should grant his departure request because: (1) he would have to complete sex offender treatment in prison; (2) he was older, meaning he was less likely to reoffend; (3) he was acting as a "Good Samaritan" by taking the victim into his house, providing her shelter and food; and (4) he caused only a relatively small degree of harm to the victim because no evidence of physical penetration existed.

Yet, by Haake's own admission, the sex offender treatment in prison was mandatory. Haake's evidence supporting that older criminal offenders are less likely to become repeat offenders referred to crimes generally, not sex crimes specifically. In addressing the constitutionality of the imposition of lifetime postrelease supervision on sex offenders, Kansas appellate courts have consistently emphasized that sex offenders have a much higher rate of recidivism than other offenders. See, *e.g.*, *State v. Mossman*, 294 Kan. 901, 910, 281 P.3d 153 (2012) (explaining that "[t]he risk of recidivism posed by sex offenders is 'frightening and high'"). Although providing shelter and food for the victim may have been a good act initially, given that Haake sodomized the 7-year-old victim, Haake has seriously perverted what it means to be a Good Samaritan. Indeed, in the parable of the Good Samaritan, the Good Samaritan felt compassion for the injured victim—so much so that he bandaged up his wounds, pouring oil and wine on them. Clearly, Haake's actions towards his minor victim afforded no basis for saying he was a Good Samaritan.

Last, regardless of the existence of physical penetration, Haake certainly could have caused a great degree of harm to the 7-year-old victim by engaging in sodomy. Haake's assertion that he caused only a relatively small degree of harm to the victim is pure speculation.

Consequently, we determine that the trial court acted reasonably by denying Haake's request for an additional 50% durational departure on top of his already departed sentence. The trial court granted the initial departure based on substantial and compelling reasons, but Haake's remaining arguments regarding why the trial court should grant a further departure were neither substantial nor compelling. As a result, Haake's argument fails.

Affirmed.