NOT DESIGNATED FOR PUBLICATION

No. 125,597

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHELE R. BAGGETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; KEITH SCHROEDER, judge. Submitted without oral argument. Opinion filed July 5, 2024. Affirmed in part, vacated in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Brian Koch*, assistant district attorney, *Thomas Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: A jury convicted Michele R. Baggett of possession of methamphetamine following a police search of her vehicle. On appeal, Baggett claims the district court erred when it instructed the jury, her defense counsel provided ineffective assistance at trial, and the district court improperly assessed Board of Indigents' Defense Services (BIDS) attorney fees. Baggett did not meet her burden of showing clear error in instructing the jury because even if we assume error, she has not shown she was prejudiced by the district court's erroneous instruction. And we do not consider Baggett's claim of her trial counsel's ineffective assistance because she presents this claim for the

1

first time on direct appeal with no request for an evidentiary hearing. Although we affirm her conviction, we must vacate the district court's BIDS attorney fee assessment and remand that issue for reconsideration because the district court did not consider Baggett's financial obligations and burdens on the record before imposing the assessment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2021, after receiving a report of a theft in progress at a Family Dollar store, the Hutchinson Police Department dispatched multiple officers to investigate. The reporting party provided a description of a van, including a license plate number, and indicated the van's passenger was the suspect who allegedly took beauty products from the store without paying.

Based on the reported description, Lieutenant Jake Graber located the van and initiated a stop. Two other officers, Michael Ruebke and Hunter Ogburn, arrived to assist. Lieutenant Graber approached the driver's side window and immediately recognized the driver as Baggett. Meanwhile, Officer Ruebke spoke with the passenger, Christina Groves.

Additional officers reported to the Family Dollar and retrieved footage that they believed confirmed Groves had taken beauty products from the store. After communicating with the officers at Family Dollar, the officers determined they needed to search the van and the women were removed from the vehicle.

While searching for the stolen merchandise, Lieutenant Graber found a small floral print bag between the van's center console and the driver's seat. A search of the bag revealed three smaller clear bags that contained a crystal substance that Lieutenant Graber believed was methamphetamine. The bag also contained a glass pipe and a debit

2

card belonging to Baggett. The officers collected the evidence and a forensic chemist with the Kansas Bureau of Investigation (KBI) confirmed it was methamphetamine.

A few days after the search of Baggett's van, the State charged her with one count of possession with intent to distribute methamphetamine, one count of driving without insurance, and one count of driving while suspended.

The district court held a jury trial and the State ultimately sought to dismiss the driving-related charges. The jury was instructed on the offense of possession with intent to distribute and the lesser included offense of possession of methamphetamine, and convicted Baggett of the lesser offense of possession of methamphetamine. The district court sentenced Baggett to an underlying 11 months' imprisonment but granted presumptive probation after ordering she first serve 30 days in jail.

Baggett now appeals.

THE DISTRICT COURT DID NOT CLEARLY ERR WHEN INSTRUCTING THE JURY

In her first argument, Baggett claims the district court erred when it provided jury instruction No. 10. This instruction read:  "The State must prove that the defendant committed the crimes knowingly. A defendant acts knowingly when the defendant is aware of the nature of her conduct that the State complains about."

Baggett argues this instruction erroneously lowered the State's burden of proof by telling the jury the State could meet its burden of showing she committed the offense, or the alternative lesser offense, if the State showed she committed the crimes "'knowingly.'" Baggett claims this mens rea instruction is inaccurate when compared to the mens rea element for possession, which requires "joint or exclusive control over an item with knowledge of *and intent* to have such control or knowingly keeping some item in a place

3

where the person has some measure of access and right of control." (Emphasis added.) K.S.A. 2020 Supp. 21-5701(q). Although this statute was amended in 2023, we utilize the 2020 definition of "possession" applicable to Baggett's crime.

*Applicable Legal Standards*

When analyzing jury instruction issues, this court follows a three-step process:  (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, or in other words, whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. To determine whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the district court, such as Baggett admits here, this court reviews the instruction to determine if it was clearly erroneous. K.S.A. 2020 Supp. 22-3414(3). And for a jury instruction to be clearly erroneous, this court "will only reverse if an error occurred and the court is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred." *State v. Crosby*, 312 Kan. 630, 639, 479

4

P.3d 167 (2021). As the party claiming clear error, Baggett "has the burden to show the necessary prejudice." 312 Kan. at 639.

*Baggett does not meet her burden to show clear error.*

In response to Baggett's argument, the State contends she fails to meet her burden of establishing prejudice under a clear error standard. Making no argument on the legality of jury instruction No. 10, and assuming the district court erred in providing it, the State suggests Baggett has not shown the jury would have reached a different verdict had the instruction error not occurred. See 312 Kan. at 639.

To this point, Baggett argues the jury was misled by jury instruction No. 10 because when that instruction was read as part of the whole, the "jury instructions offered contradictory explanations of the requisite mens rea for possession of methamphetamine." And she claims the contradictory mens rea is relevant because she was one of two occupants in the van where the methamphetamine was located, arguing at least one juror could have formed reasonable doubt about whether she intentionally controlled the methamphetamine found in the jointly occupied van.

The jury convicted Baggett of the lesser charged offense of unlawful possession of methamphetamine, in violation of K.S.A. 2020 Supp. 21-5706(a). Under this statute, the State must simply prove that Baggett possessed methamphetamine. As noted above, possession is defined as "joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2020 Supp. 21-5701(q).

As Baggett concedes on appeal, the district court provided other jury instructions that appropriately explained the State's burden of proof. First, jury instruction No. 7 defined multiple terms including "possession," which "means having joint or exclusive

5

control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

And jury instruction No. 9 also provided the definition of possession:

"Michele Baggett is charged with unlawfully possessing methamphetamine. Michele Baggett pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. Michele Baggett possessed methamphetamine.
"2. This act occurred on or about the 27th day of March, 2021, in Reno County, Kansas.
"'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

Jury instruction No. 10 immediately followed with the explanation of "knowingly" that Baggett claims misled the jurors.

But contrary to her argument on appeal, it seems highly unlikely the jury would have reached a different verdict had the district court not provided jury instruction No. 10. The jury heard evidence of Baggett driving the vehicle when Lieutenant Graber initiated the traffic stop and spoke with her from the driver's side window. They also heard evidence that Lieutenant Graber's search of the vehicle revealed a small floral print bag that held smaller plastic baggies containing methamphetamine and Baggett's own debit card. In addition to Lieutenant Graber's testimony, Officer Ruebke also testified to searching the bag and locating the methamphetamine and Baggett's debit card. And Officer Ogburn identified the same baggies of methamphetamine as those he packaged as evidence after the search. The jury also heard evidence that the KBI lab tested the

contents of the clear baggies and confirmed it to be methamphetamine. What's more—Baggett did not present any evidence to the contrary.

Apart from the testimony informing the jury that a second occupant was in the vehicle at the time the officers located the methamphetamine and debit card, the jury heard no evidence to suggest the methamphetamine could belong to anyone but Baggett. Under a clear error standard, Baggett simply has not shown the jury would have reached a different verdict if the district court had not provided jury instruction No. 10. Even without that instruction, the jurors were still informed the State must prove Baggett "possessed methamphetamine" by "means [of] having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." Accordingly, the jurors were aware of the applicable standard and nevertheless convicted Baggett based on the undisputed evidence the State presented.

Baggett has not met her burden of showing clear error—that is, that the jury would have returned a different verdict had the district court not provided jury instruction No. 10. See *Crosby*, 312 Kan. at 639.

## WE DO NOT REACH BAGGETT'S CLAIM THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE

Next, Baggett argues her trial counsel erred in pursuing a guilt-based defense because she claims the record shows she did not wish to plead guilty to a lesser offense. Her trial counsel told the jury during opening statements that Baggett admitted the methamphetamine belonged to her. He added that "the evidence will show that she's a personal user of methamphetamine and that's all it was at that particular time." And in closing arguments, her counsel said the same: "She's a meth user. She admitted she's a meth user."

7

Relying on *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000), Baggett argues her trial counsel provided ineffective assistance of counsel because he pursued this guilt-based defense over her objection, which implicated her fundamental right to plead guilty or not guilty. See 270 Kan. at 440 (defense counsel's imposing a guilt-based defense against defendant's wishes violated his Sixth Amendment right to counsel and denied him a fair trial). Baggett claims the record shows "she did not wish to admit guilt and that she objected to her defense counsel's performance."

As Baggett concedes, Kansas appellate courts generally do not consider an ineffective assistance of counsel claim for the first time on direct appeal. See *Trotter v. State*, 288 Kan. 112, Syl. ¶ 10, 200 P.3d 1236 (2009) ("Claims of ineffective assistance of counsel, as a general rule, cannot be raised for the first time on appeal. Rather, in most cases a district court must consider the evidence to determine the two-prong test for establishing ineffective assistance of counsel."). The typical course is a request by appellate counsel for remand to the district court for an evidentiary hearing on the ineffective assistance claim, commonly called a "*Van Cleave* hearing." See *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986).

Even so, the Kansas Supreme Court has reviewed a similar claim on direct appeal, finding:

> "As a general rule, we would not consider a defendant's assertion of ineffective assistance of counsel before the trial court has had an opportunity to assess the performance of counsel. However, such assessment by the trial court is not necessary where the record on appeal is sufficiently complete for this court to decide the issue in a direct appeal. Here, the acts of counsel that Carter relies on are not disputed and are clearly reflected in the record. It would serve no purpose to remand to resolve the issue. The record on appeal is sufficient for this court to consider Carter's constitutional claims, including ineffective assistance of counsel. [Citation omitted.]" *Carter*, 270 Kan. at 433.

But our Supreme Court refused to address the same claim more recently in *State v. Hilyard*, 316 Kan. 326, 337-40, 515 P.3d 267 (2022). Like the situation here, Hilyard's appellate counsel did not request a *Van Cleave* hearing, which was ultimately fatal to his claim on appeal: "When appellate counsel does not request a hearing, this court need not order a *Van Cleave* remand sua sponte." *Hilyard*, 316 Kan. at 338; see *State v. Dull*, 298 Kan. 832, 839-40, 317 P.3d 104 (2014) (declining to remand because of appellate counsel's apparently deliberate decision not to seek a *Van Cleave* hearing, even though at least one of the defendant's arguments may require an evidentiary hearing to resolve it). And the *Hilyard* court noted the defendant's "assertion that a remand is unnecessary for an appellate court to resolve the issue has rarely been successful." 316 Kan. at 338. The *Hilyard* court reiterated its prior, related holdings:

> "'Although "there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious," and an ineffectiveness claim can therefore be resolved when raised for the first time on appeal, these circumstances are "extremely rare." *Rowland* [*v. State*], 289 Kan. [1076] at 1084-85 [219 P.3d 1212 (2009)]; see also *State v. Levy*, 292 Kan. 379, 253 P.3d 341 (2011) (declining to consider ineffective assistance claims for first time on direct appeal; declining to remand for *Van Cleave* hearing based on defendant's failure to meet minimal requirements); *Laymon v. State*, 280 Kan. 430, 444, 122 P.3d 326 (2005) (direct appeal counsel's performance objectively unreasonable; performance prejudiced defendant); *Carter*, 270 Kan. at 433-34, 440-41 (trial counsel's pursuit of guilt-based defense despite client's contrary wishes ineffective, prejudicial per se).' *Dull*, 298 Kan. at 839." *Hilyard*, 316 Kan. at 338.

The *Hilyard* court found that claim was distinguishable from *Carter* because the circumstances were "strikingly different" between the two cases:

> "In *Carter*, the defendant made repeated and vigorous objections to his trial counsel's use of a guilt-based defense. Just like Hilyard's case, trial counsel admitted involvement in a homicide, but argued there was no premeditation. Unlike Hilyard, the

9

defendant in *Carter* maintained his total innocence and complained vociferously—on the record—more than once when his defense counsel attempted to use a guilt-based defense.

"This court accepted Carter's claim—raised for the first time on appeal—because the record was sufficient to decide the issue on direct appeal. The acts of counsel that Carter relied on were not in dispute and there was no purpose to a remand. *Carter*, 270 Kan. at 432-33. Hilyard's case is not the same. Hilyard never objected on the record to her trial counsel's use of a guilt-based strategy. Notably, she actively participated in it. Hilyard took the stand and admitted to killing [the victim]. The purpose of her testimony reflected her defense strategy: convincing the jury that there was no premeditation.

"Simply put, Hilyard's case is not one of the 'extremely rare' times an ineffectiveness claim can be resolved on direct appeal. Her complained of error is that her trial attorney did not memorialize her explicit consent to a guilt-based defense on the record. But we find no rule that says it must be so and no compelling reason to impose such a rule now. We will not create the presumption Hilyard seeks." *Hilyard*, 316 Kan. at 338-39.

Much as in this case, the *Hilyard* court opined that "[t]he only dispute Hilyard offers is whether she consented to the guilt-based defense; if she told her attorney she did not want to use a guilt-based defense and they used one anyway, it would certainly be ineffective assistance of counsel." 316 Kan. at 339. Based on our precedent that refuses to require a defendant make an on-the-record consent or objection, the *Hilyard* court held: "Quite simply, a claim of ineffective assistance of counsel for failure to obtain consent for a guilt-based defense must be proved below." 316 Kan. at 339. And because she did not request a *Van Cleave* hearing, the *Hilyard* court refused to sua sponte order such hearing or consider her argument for the first time on direct appeal. 316 Kan at 339-40.

We have before us here facts more akin to *Hilyard* than *Carter*. Here, it seems Baggett's appellate counsel made the deliberate decision not to seek a *Van Cleave* hearing. Baggett did not explicitly make this statement in her brief, but she contends she is not disputing facts but rather "relying on the undisputed facts that are part of the record" before requesting this court reverse and remand for a new trial. She never

requests an evidentiary hearing. And, her appellate counsel relies on *Hilyard* to distinguish her case, yet Baggett fails to address the primary reason the *Hilyard* court refused to consider the claim—that she never objected on the record to her trial counsel's use of a guilt-based strategy.

Baggett relies on two actions she took before trial to suggest we may now consider her claim, as in *Carter*. She relies on what she characterizes as undisputed facts in the record to show she did not want her trial counsel to pursue a guilt-based defense.

First, Baggett points to her refusal to accept the State's plea bargain—and her related "significant amount of confusion and dissatisfaction toward pleading guilty"—the day before trial. As she claims, the State extended a plea offer to Baggett requiring her to plead guilty to two counts of simple possession of methamphetamine in exchange for the State's dismissal of the distribution charge. After counsel for both parties informed the court of the bargain, the district court asked Baggett if she understood what was going on. She replied, "Honestly, just a little bit." Based on her confusion, the district court explained the amended charges and the resulting presumptive sentences. When the district court asked if she understood again, Baggett replied, "Kind of sort of," and then she asked whether she would get probation or prison time. The district court explained its requirement to impose a prison sanction even if it grants probation, explained how the sentencing grid works, and informed Baggett that she "would be presumptive prison" but also informed her that the State agreed to recommend "a departure to put you on community corrections."

The district court again asked Baggett if she understood, and she confirmed she did. Baggett asked a few more questions and then informed the court that she had enough time to speak with her defense counsel regarding the plea bargain. And defense counsel agreed they had enough time to discuss the case. But after the district court informed Baggett of her right to a preliminary hearing on the State's charges, Baggett again

11

appeared confused by the proceedings. Eventually, after the district court confirmed Baggett graduated from high school and was not being threatened, Baggett and her defense counsel left the courtroom to discuss her case. When they returned to the courtroom, Baggett informed the district court that she would like to proceed the next day with the scheduled trial. Baggett informed the district court that she did not want to plead guilty, she rejected the State's plea bargain, and confirmed she made the decision on her own.

Second, Baggett points to her request for a new attorney the day of trial. As she claims, Baggett requested a new attorney because she did not feel like she was being adequately represented. When asked for an example, Baggett argued her counsel was not listening, or taking seriously, her request for a motion to suppress. In response, the State argued Baggett's defense counsel "worked very diligently" and believed defense counsel's "aggressive and yet [courteous] negotiations" resulted in a reduced offer from the State. And the State argued Baggett's request for new counsel was an improper delay tactic.

The district court proceeded to inquire deeper into the circumstances leading up to Lieutenant Graber's traffic stop, including the State's proffer of reasonable suspicion based on the alleged theft. And Baggett provided more examples of her dissatisfaction with defense counsel—such as failing to investigate and failing to communicate—but the district court was not persuaded. Ultimately, the district court found it was "not really seeing any issues right now" and denied Baggett's request for a new attorney.

Weighing against her claim is the fact that Baggett told the court she was not dissatisfied with her counsel after she was convicted by the jury. After the district court informed Baggett of her right to appeal and the upcoming presentence investigation report, the judge asked Baggett, "Are you still dissatisfied with the services of your attorney?" She replied, "No, sir. No." And the district judge concluded, "I want to make sure we have that on the record. Thank you."

12

Baggett now suggests we can consider her ineffective assistance claim because she is making her argument based on undisputed facts. But to even make her argument, she is forcing this court to conduct an improper evidentiary review to determine the only fact relevant to this issue on appeal: whether her defense counsel pursued a guilt-based defense over her objection. This is not an undisputed fact, as she claims. Rather, Baggett relies on the undisputed facts that she did not accept the State's plea, and then requested a new attorney, to argue it is likewise undisputed that she did not want to pursue a guilt-based defense. But neither her reluctance to plead guilty nor her request for a new attorney—both clear in the record—offer insight at all into her claim that she opposed a guilt-based defense, which is simply not contained in the record.

In *Hilyard*, the Kansas Supreme Court refused to reach the same claim for this exact reason: "The only dispute Hilyard offers is whether she consented to the guilt-based defense." 316 Kan. at 339. But she did not prove this claim below or ask for a *Van Cleave* evidentiary hearing to prove it, so the *Hilyard* court declined to consider the claim or sua sponte order such hearing. "In sum, this issue is not preserved and we decline review." *Hilyard*, 316 Kan. at 340.

Both Baggett's situation and the facts in *Hilyard* are easily distinguished from *Carter*, where the Kansas Supreme Court addressed the claims because the record showed defendant made repeated and vigorous objections to defense counsel's use of a guilt-based defense on the record. These acts of counsel were not in dispute. Because there was no purpose for a remand, the *Carter* court addressed the ineffectiveness issue for the first time on appeal. 270 Kan. at 432-33.

Because we find Baggett's claim is more akin to *Hilyard* than *Carter*, we opt not to review Baggett's ineffectiveness claim because it was not preserved. Unlike in *Carter*, Baggett did not show the record on appeal is sufficiently complete for this court to decide the issue in a direct appeal. And because Baggett did not request a *Van Cleave* hearing,

13

we will not sua sponte order such a hearing. See *Hilyard*, 316 Kan. at 340; *Dull*, 298 Kan. at 839-40.

THE DISTRICT COURT ERRED BY FAILING TO ADDRESS BIDS ATTORNEY FEES

In her final claim, Baggett argues the district court erred when it assessed BIDS attorney fees without considering her financial resources and the burden of the fee against her in violation of K.S.A. 2020 Supp. 22-4513. Baggett admits she did not raise this issue below, but correctly argues this court can consider her claim for the first time on appeal. See *State v. Garcia-Garcia*, 309 Kan. 801, 823, 441 P.3d 52 (2019) ("We conclude we may review the newly raised BIDS matter.").

Resolution of a challenge to the district court's compliance with K.S.A. 2020 Supp. 22-4513 requires statutory interpretation that presents a question of law over which this court exercises unlimited review. 309 Kan. at 822.

Our Supreme Court has found K.S.A. 22-4513 imposes a mandatory duty on trial courts to tax BIDS fees against a defendant. *State v. Robinson*, 281 Kan. 538, 544, 132 P.3d 934 (2006). As part of its duties, the statute requires a sentencing court in assessing BIDS fees to consider on the record at the time of the assessment the defendant's financial resources and "'the nature of the burden that payment of such sum will impose.'" 281 Kan. at 543.

Here, as the State concedes and the record reflects, the district court did not inquire regarding Baggett's financial resources prior to ordering BIDS attorney fees. The district court imposed many fees from the bench, but it did not address BIDS attorney fees at sentencing. Instead, the BIDS attorney fees are solely reflected in the journal entry of sentencing wherein it states the district court ordered $775 for "BIDS Attorney Fee." And the journal entry incorrectly states: "Defendant's financial resources and burden

14

imposed by BIDS application and attorney fees considered by the court pursuant to K.S.A. 22-4513 and [*Robinson*]."

On appeal, Baggett argues the district court erred solely by imposing the BIDS attorney fees. She does not challenge the BIDS application fee. She also inexplicably claims the district court imposed a $700 fee, rather than $775. But in any event, the record shows the district court erred by imposing the BIDS attorney fees she challenges without inquiring into her financial resources and burdens under K.S.A. 2020 Supp. 22-4513 and *Robinson*. As a result, we vacate the BIDS attorney fees assessment and remand the case for reconsideration of Baggett's obligation. See *Garcia-Garcia*, 309 Kan. at 824 (disposing of BIDS challenge by vacating attorney fees assessment and remanding for reconsideration of the defendant's obligation).

Affirmed in part, vacated in part, and remanded with directions.