NOT DESIGNATED FOR PUBLICATION

No. 121,601

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM G. KANGAS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Harper District Court; R. SCOTT MCQUIN, judge. Opinion filed October 9, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

PER CURIAM: William G. Kangas appeals the district court's denial of his K.S.A. 60-1507 motion. In the district court, Kangas complained that his trial counsel failed to object to the prosecutor's statements, arguing they vouched for witness' credibility. He also complained that his appellate counsel should have raised prosecutorial error on appeal. The district court held that neither counsel was ineffective. Kangas renews these claims on appeal. Because the statements were not prosecutorial error, we affirm the district court.

1

In 2013, a jury convicted William Kangas of aggravated kidnapping, criminal threat, domestic battery, and criminal damage to property. The district court sentenced him to 88 months in prison. On his direct appeal, he argued that the district court violated his constitutional rights when it allowed a video recording of the victim's statements to the police into the jury room for the jury's examination. This court affirmed the district court. See *State v. Kangas*, No. 111,519, 2015 WL 5458519 (Kan. App. 2015) (unpublished opinion).

During the trial, Terry Griffiths, a nurse practitioner, testified she examined S. S., the victim, after she came to the emergency room with multiple bruises. Griffiths recounted S.S.'s account about how Kangas beat her. Griffin testified she was trained to detect malingering and that S.S. did not appear to be malingering. She stated that S.S. did not appear to be under the influence of alcohol.

The victim's mother, C.G., testified that a pastor brought S.S., bruised and upset, over to her home. She recounted what S.S. told her about what Kangas did to her. After this, C.G. took S.S. to the emergency room.

During closing arguments, the prosecutor made several statements to the jury:

> "We have seen the photos of what happened to her. We saw that she went then to the hospital. She told the nurse practitioner what happened to her. She told essentially the same thing. She told her mother what happened to her, when they took her to her mother's home. Essentially the same thing. She's not a robot, she told it essentially the same every time. The same essential facts are there. A person probably doesn't tell exactly the same thing unless they have memorized. She didn't memorize.
>
> . . . .

"Her mother knows her daughter. You heard her testimony about what her—what her daughter looked like and how worried she was. And you heard the nurse practitioner testify, she was not malingering. She was not pretending to be hurt. This is a trained nurse practitioner. She knows how to find out. She said, no, that didn't happen. And we asked her, was she under the influence. She's trained to detect those things, she needs to do that for her work, and she testified, no, she didn't see any signs that she was currently under the influence, although it showed in her blood test she had smoked marijuana sometime in the last 45 days. She said herself that she didn't drink alcohol. And, you notice she recanted many of the things that she originally tried to say to help—to help William."

In 2017, Kangas filed a K.S.A. 60-1507 motion. Kangas listed four statements made by the prosecution:

- "A person probably doesn't tell exactly the same thing unless they memorized. She didn't memorize."
- "Her mother knows her daughter."
- "This is a trained nurse practitioner. She knows how to find out. She said no that didn't happen."
- "And we asked her, was she under the influence. She's trained to detect those things, she needs to do that for her work, and she testified, no, she didn't see any signs that she was currently under the influence, although it showed in her blood test she had smoked marijuana sometime in the last 45 days."

Kangas also noted that the appellate defender, Christina Kerls, did not chose to pursue this claim in his direct appeal. Kangas later amended his motion to include a claim that his trial counsel, Michael Brown, was ineffective for failing to object to the prosecutorial errors and his appellate counsel was ineffective for failing to raise prosecutorial error and trial counsel's ineffectiveness on appeal.

3

The district court held an evidentiary hearing. First, Brown testified about his representation of Kangas but did not testify to anything about the prosecutor's closing argument. Second, Kerls testified that she always considers statements made by prosecutors in either opening or closing argument because they do not have to be objected to. But Kerls did not testify about the statements Kangas raises in this appeal. Lastly, Kangas testified that he wrote Kerls a letter with a list of 12 issues he thought they should appeal. The only issue she pursued was a claim that the prosecution should not have given a video to the jury in its deliberations.

In a memorandum decision, the district court denied Kangas' motion. It found that the evidence did not support Kangas' claims of ineffective assistance of trial or appellate counsel. The district court found that Kerls, upon her review of the record, determined there was no basis for any claim of prosecutorial error. Kerls saw that Brown had objected to all the potential prosecutorial error claims, and the district court addressed these objections. Kerls concluded Kangas suffered no prejudice. The district court also stated that "most of the claims of prosecutorial [error] set out in Kangas' motion are not [error] at all, but merely the prosecutor pointing out the evidence favorable to the [S]tate's case." The district court held that neither counsel was ineffective.

Kangas timely appeals.

### THE DISTRICT COURT DID NOT ERR IN DENYING KANGAS' CLAIM THAT HIS TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE FOR FAILING TO CHALLENGE THE PROSECUTOR'S STATEMENTS.

On appeal, Kangas asserts the prosecutor improperly vouched for its witnesses' credibility. He argues that his trial counsel was ineffective for failing to object to these statements and his appellate counsel should have raised this prosecutorial error on appeal. He concludes this alone establishes deficient performances and prejudice.

4

*Preservation*

In his motion and amended motion, Kangas raised ineffective counsel for failing to object when the prosecutor allegedly vouched for the credibility of its witnesses. The district court denied Kangas' K.S.A. 60-1507 motion and stated that the evidence did not support the claims of ineffective assistance of counsel. Kangas has properly preserved this issue.

*Standard of Review*

When the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, appellate courts review the district court's factual findings using a substantial competent evidence standard. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. *Butler*, 307 Kan. at 853.

*Analysis*

*Trial Counsel Was Not Ineffective*

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

5

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *State v. Sprague*, 303 Kan.418, 426, 362 P.3d 828 (2015).The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *Sprague*, 303 Kan. at 426.

Kangas must show that Brown's performance was deficient under the totality of the circumstances. See *Salary*, 309 Kan. at 483. Kangas claims Brown's failure to object to the prosecutor's alleged vouching for its witnesses' credibility establishes Brown's deficient performance. Under the totality of the circumstances, Kangas must first show that these statements fall under prosecutorial error in the first place. He fails to do so. These statements were not the prosecutor's mere opinion but were proper statements that directed the jury to make reasonable inferences based on the evidence.

In *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 5-8, 378 P.3d 1060 (2016), the Kansas Supreme Court revamped the concept of and standard of review for "prosecutorial misconduct." In the context of whether a criminal conviction is reversible due to the inappropriate actions of a prosecutor during trial, the nomenclature has been changed to "prosecutorial error." 305 Kan. at 91-93.

An appellate court uses a two-step process to evaluate claims of prosecutorial error. The complaining party must show that an error has been committed and that he or she was prejudiced by that error. See 305 Kan. at 109.

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019).

Because jurors must base their determination of a witness' credibility on their observations and experience, a prosecutor errs when he or she offers to the jury his or her opinion on the credibility of a witness. See *State v. Sean*, 306 Kan. 963, 979, 399 P.3d 168 (2017); *State v. Dull*, 298 Kan. 832, 837, 317 P.3d 104 (2014); Kansas Rule of Professional Conduct (KRPC) 3.4(e) (2020 Kan. S. Ct. R. 357) ("A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness."). Commenting on the credibility of a witness generally involves direct comments about whether the witness was lying or telling the truth. See, e.g., *State v. Hirsh*, 310 Kan. 321, 342, 446 P.3d 472 (2019) (prosecutor improperly stated, "'She told the truth.'"); *State v. Knox*, 301 Kan. 671, 683, 347 P.3d 656 (2015) (Prosecutor erred by stating her personal opinion that witness "'was brutally honest on the stand'" and told "'the truth'" because "comments were unsworn and unchecked statements that are not fair commentary on the evidence."); *Dull*, 298 Kan. at 837 (prosecutor's statement that victim's story was "'the truth'" outside wide latitude afforded prosecutors); *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005) (prosecutor improperly said, "'you know [the victim] was telling you the truth'"); *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000) (prosecutorial "misconduct" when the prosecutor told the jury that the defendant and defense counsel lied).

Yet "a prosecutor does not act outside the wide latitude afforded if he or she merely observes that some reasonable inference about witness credibility may be drawn from evidence introduced at trial." *Sean*, 306 Kan. at 980 (stating a fact based on something already in evidence is not prosecutorial error); cf. *State v. Hachmeister*, 311 Kan. _504, 519, 464 P.3d 947 (2020) ("Prosecutors may comment on a witness' lack of

7

motivation to be untruthful but must base these comments on the evidence and reasonable inferences from the evidence without stating their own personal opinion concerning the witness' credibility."). See, e.g., *State v. Duong*, 292 Kan. 824, 831-32, 257 P.3d 309 (2011) (prosecutor's explicit comments about witnesses' credibility not improper because they were reasonable inferences based on the evidence at trial and prosecutor directed jury to that evidence); *State v. King*, 288 Kan. 333, 353, 204 P.3d 585 (2009) (prosecutor may comment on evidence that demonstrates the witness' motivations to be untruthful); *State v. McReynolds*, 288 Kan. 318, 326, 202 P.3d 658 (2009) (A prosecutor may offer "the jury an explanation of 'what it should look for in assessing witness credibility.'"); *State v. Davis*, 275 Kan. 107, 122-23, 61 P.3d 701 (2003) (prosecutor made reasonable inferences based on evidence in stating witness should be believed and that witness was more likely to tell truth in first police interview than second).

Kangas asserts the prosecutor's statements, listed above, were improper vouching. They were not. They were comments either about the evidence or about what the jury should look for in assessing witness credibility. The prosecutor's statement, "A person probably doesn't tell exactly the same thing unless they memorized. She didn't memorize," came in the context of the prosecutor telling the jury that S.S.'s multiple stories were close but not perfect. S.S.'s testimony and her disparate narratives may have challenged the victim's credibility, and the prosecutor properly offered the jury "an explanation of 'what it should look for in assessing'" those narratives. See *McReynolds*, 288 Kan. at 326 (stating it was proper for the prosecutor to offer an explanation for the defendant's two competing stories); see also *State v. Carter*, 305 Kan. 139, 156-57, 380 P.3d 189 (2016) (stating the prosecutor's statements that the defendant was telling three stories of the events to protect himself was not improper); *State v. Chanthaseng*, 293 Kan. 140, 143, 148, 261 P.3d 889 (2011) (stating the prosecutor's statement that the witness was credible because she was consistent and "'the same on the elements'" was not improper).

8

The prosecutor's statements about the victim's mother and the nurse practitioner were not the prosecutor's personal opinion about their credibility. They were statements made about the evidence or reasonable inferences that could be drawn from the evidence. The statement, "Her mother knows her daughter," was a reasonable reference regarding the relationship between the mother and daughter. It was a fair comment that a mother would have insight to her daughter's comments and behavior. The statements about the nurse practitioner pointed to her training and the testimony she gave at trial.

Because none of these statements were prosecutorial error, there was no reason for Brown to object at trial. To prevail, Kangas must establish that Brown's performance was deficient under the totality of the circumstances. Brown's failure to object to comments that were not error does not help Kangas meet his burden to show Brown was ineffective. Kangas challenges no other aspect of the district court's holding that Brown was ineffective. We affirm the district court's holding that Kangas failed to meet the first prong of the *Strickland* test, and his claim for Brown's ineffectiveness fails.

In all events, Kangas fails to claim or make a showing that the result of the trial would have been different but for the comments of the prosecutor. Kangas fails on the second prong of the test for ineffective assistance of counsel.

### *Appellate Counsel Was Not Ineffective*

To establish ineffective assistance of counsel on appeal, a defendant must show that (1) counsel's performance, based on the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness and (2) the defendant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. *Miller v. State*, 298 Kan. 921, 930-31, 934, 318 P.3d 155 (2014); see also *Butler*, 307 Kan. at 852-53 (detailed quotation describing the *Strickland* standard).

9

Like the above argument, the district court did not err in denying Kangas' claim that Kerls was ineffective. She was not ineffective for failing to raise prosecutorial error over statements that she judged not to be error—and that indeed were not. See *Holmes v. State*, 292 Kan. 271, 280, 252 P.3d 573 (2011) ("[A]n attorney has no duty to assert on appeal every alleged error."). Thus Kangas' argument fails here as well.

Affirmed.